JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 01487

SONY/ATV SONGS LLC, SONY/ATV SOUNDS
LLC, SONY/ATV TUNES LLC, PEER
INTERNATIONAL CORPORATION, SONGS OF
PEER, LTD., PEERMUSIC III, LTD., MPL MUSIC
PUBLISHING, INC., FRANK MUSIC
CORPORATION, RYTVOC, INC., on behalf of
themselves and all others similarly situated,

                         Plaintiffs,

               -against-

MUSICNET, INC. d/b/a MEDIANET DIGITAL,

                       Defendant.

Civil Action No.: _____

**CLASS ACTION COMPLAINT**

RECEIVED
FEB 13 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Sony/ATV Songs LLC, Sony/ATV Sounds LLC, Sony/ATV Tunes LLC, Peer

International Corporation, Songs of Peer, Ltd., peermusic III, Ltd., MPL Music Publishing, Inc.,

Frank Music Corporation and RYTVOC, Inc. (collectively "Representative Plaintiffs"), on

behalf of themselves and all others similarly situated ("Plaintiffs" or, as hereinafter defined, the

"Class"), by their attorneys Morrison & Foerster LLP, for their Complaint against defendant

MusicNet, Inc. d/b/a MediaNet Digital ("MediaNet" or "Defendant"), allege, upon knowledge as

to themselves and their actions and upon information and belief as to all other matters, as

follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a class action on behalf of thousands of music publishers represented by

The Harry Fox Agency, Inc. ("HFA") seeking damages, a declaratory judgment and injunctive

relief to put an end to Defendant MediaNet's willful infringement of their copyrighted musical

compositions. MediaNet's current business model is based upon the indiscriminate and ongoing unauthorized reproduction and distribution of musical works that belong to others.

2.        Billing itself as "the world's leading provider of business-to-business digital entertainment services" with a "comprehensive catalog" of over 3 million songs, MediaNet (formerly known as MusicNet) provides music content and a technology platform to enable its business partners to offer their own branded digital music services to consumers. MediaNet's unlawful music service offering access to songs in the form of limited downloads and interactive streams ("Music Service") supplies music content to consumers through a host of well-known digital outlets, including, HMV and FYE, each of which has contracted MediaNet to be its back-end supplier of digital music content and related technology, as well as through its own digital music service called Performer Digital.

3.        Acting through these retail channels, MediaNet makes and delivers digital copies of musical works to end users. In clear disregard of its obligations under copyright law, MediaNet offers its Music Service without having obtained license authority and without compensating music publishers or songwriters for many of the works it is using. Well aware that much of its activity is unauthorized, MediaNet nonetheless continues to reproduce and distribute thousands of unlicensed musical compositions as part of the "comprehensive catalog" it makes available to its business partners and, ultimately, the public.

4.        In order to make its Music Service available to its customers and to ultimate users, MediaNet also makes and maintains reproductions of musical works on computer servers ("server copies"). Relying on its vast library of server copies, MediaNet delivers music to consumers through its white-label partners in a variety of digital formats, including downloads and interactive streams. According to MediaNet, as of April 2007, MediaNet was providing an average of 6.8 million streams and downloads each day.

ny-799219 v2

5.    MediaNet, which is owned and financed by the private equity firm Baker Capital, benefits from its illegal conduct by charging fees to its business partners and subscribers of Performer Digital for providing music that it has not licensed and for which no royalties are paid. This is so even though its business model is supposedly premised on providing already licensed content as a white-label provider.

6.    The open and ongoing infringement of Plaintiffs' musical works has caused and continues to cause Plaintiffs great harm.  This action is necessary to stop Defendant's unauthorized, willful and continued reproduction and distribution of Plaintiffs' copyrighted musical compositions in and through its Music Service and to compensate Plaintiffs for the large-scale and continuing infringement of their works.  Plaintiffs seek injunctive, declaratory and other equitable relief and damages as provided under the Copyright Act to redress MediaNet's willful copyright infringement.

<u>**JURISDICTION AND VENUE**</u>

7.    This action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

8.    This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has personal jurisdiction over Defendant.  Defendant does continuous and systematic business in New York State and in this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the Defendant or its agent may be found in this District, and because Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

### Plaintiffs

11.     Music publishers are in the business of licensing copyrighted musical compositions to be recorded, reproduced and distributed by record companies, digital media companies and others. Royalties collected by music publishers under such licenses are then distributed to the songwriters who created those works so songwriters are compensated for their efforts. Thus, for example, when a record label or Internet music service wishes to reproduce and/or distribute a recording (or "phonorecord," in the language of the Copyright Act) of a musical work in the form of a CD or via a digital transmission, the record label or Internet music service must obtain a license from, and pay royalties to, the music publisher that owns or controls the copyright in that work.

12.     Each of the Representative Plaintiffs employs HFA as an agent for the licensing of their reproduction and distribution rights in copyrighted musical works (often referred to as "mechanical rights"). HFA acts as an agent for almost 35,000 music publishers that collectively own and/or control more than 1.9 million copyrighted musical works. HFA is by far the largest mechanical licensing and collection agency for music publishers in the United States, with a principal place of business in New York, New York. HFA licenses copyrighted musical works for reproduction and distribution in the form of physical phonorecords (CDs, vinyl records and cassette tapes), as well as in the form of digital phonorecord deliveries, or "DPDs," for music download and streaming services. Acting on behalf of its publisher principals, HFA collects royalties derived from these licensed uses of copyrighted music, distributes such royalties to its publisher clients and conducts examinations of licensees to ensure licensing and royalty compliance.

4

ny-799219 v2

13.    Representative Plaintiffs Sony/ATV Songs LLC, Sony/ATV Sounds LLC and Sony/ATV Tunes LLC (collectively, "Sony/ATV"), with their principal places of business in New York, are actively engaged in the business of music publishing, and license the reproduction and distribution of musical works for which they own or control the copyrights for a variety of physical and digital uses.  Musical works owned or controlled by Sony/ATV that have been infringed by MediaNet include "Black Horse & The Cherry Tree," "God Bless America Again," "Our Song," "S.E.X.," "Standing In The Shadows," "Suddenly I See," Tear Drops On My Guitar," "Thnks Fr Th Mmrs," "This Ain't A Scene, It's An Arms Race" and "Would You Go With Me."

14.    Representative Plaintiffs Peer International Corporation, Songs of Peer, Ltd. and peermusic III, Ltd. (collectively, "Peer"), with their principal places of business in New York, are actively engaged in the business of music publishing, and license the reproduction and distribution of musical works for which they own or control the copyrights for a variety of physical and digital uses.  Musical works owned or controlled by Peer that have been infringed by MediaNet include "Besame Mucho," "Échame A Mí La Culpa," "La Camisa Negra," "Llegó El Domingo," "Mar y Cielo," "Nunca Había Llorado Así," "Perfume de Gardenias" and "Wildwood Flower."

15.    Representative Plaintiffs MPL Music Publishing, Inc., Frank Music Corp. and RYTVOC, Inc. (collectively, "MPL"), with their principal places of business in New York, are actively engaged in the business of music publishing, and license the reproduction and distribution of musical works for which they own or control the copyrights for a variety of physical and digital uses.  Musical works owned or controlled by MPL that have been infringed by MediaNet include "Baby, It's Cold Outside," "Well All Right" and "Tubby The Tuba."

ny-799219 v2

16.     An exemplary list of Representative Plaintiffs' copyrighted musical works that are being used by MediaNet without permission, along with the copyright registration numbers for each, is attached hereto as Appendix A.  This list identifies only a small fraction of the copyrighted musical works owned and controlled by Representative Plaintiffs and other Class members that have been and continue to be unlawfully reproduced and distributed by Defendant.

### Defendant

17.     Defendant MediaNet is a corporation organized and existing under the laws of the State of Delaware and with its principal place of business in New York, New York.  MediaNet is wholly owned by Baker Capital, a New York-based private equity firm.  Baker Capital maintains an office and employs personnel within this District.

### MEDIANET'S INFRINGING ACTIVITIES

### Background

18.     Section 106 of the Copyright Act provides the owner of a copyrighted musical work with the exclusive rights to reproduce and distribute and to authorize the reproduction and distribution of the musical work in "phonorecords" (*i.e.*, copies).  17 U.S.C. §§ 106(1), 106(3).  These rights are commonly referred to together as "mechanical" rights, a term dating back to the period when music recordings were "mechanically" (rather than digitally) reproduced.

19.     The copyright owner's exclusive rights to reproduce and distribute phonorecords are qualified by the compulsory license scheme embodied in Section 115 of the Copyright Act.  17 U.S.C. § 115.  Under Section 115, once the copyright owner authorizes the first public distribution of a musical composition, a statutory license is available to others to reproduce and distribute the work to the public, provided they comply with the provisions of Section 115 requiring notice of use and accounting and payment of royalties to the copyright owner.

ny-799219 v2

20.     In 1995, Congress enacted the Digital Performance Right in Sound Recordings
Act ("DPRA"), which amended Section 115 to clarify and confirm the rights of reproduction and
distribution for sound recordings and musical works in the digital age.  In the DPRA, Congress
recognized that a phonorecord of a musical work could be digitally reproduced and transmitted
and that copyright owners should be compensated for those activities.  Thus, Section 115 was
amended to include a definition of "digital phonorecord delivery" ("DPD") as "each individual
delivery of a phonorecord by digital transmission of a sound recording which results in a
specifically identifiable reproduction by or for any transmission recipient of a phonorecord of
that sound recording, regardless of whether the digital transmission is also a public performance
of the sound recording or any nondramatic musical work embodied therein." 17 U.S.C. § 115(d).
Accordingly, the reproduction and distribution of musical works in the form of DPDs is subject
to licensing and payment of royalties under Section 115.

### MediaNet's Music Service

21.     MediaNet was originally founded as MusicNet in 1999 to operate a subscription
music service as a collaboration between technology company RealNetworks and several record
labels.  In the spring of 2005, it was spun off as an independent entity and acquired by Baker
Capital.

22.     MediaNet provides and operates a proprietary technology platform that supports
digital delivery of music and other media.  MediaNet boasts that its platform is "robust, scalable
and flexible[,]" while permitting its business partners to "maintain control over consumer touch
points[.]"  In other words, MediaNet provides digital music and other content, and the
technological backbone for delivery of that content, while MediaNet's business partners offer the
content to consumers.  In addition, MediaNet sponsors its own subscription music site available
directly to subscribers called Performer Digital.

7

23.    MediaNet proclaims that its "turnkey" Music Service permits its business partners to generate revenues by quickly launching a branded subscription music service that makes its extensive library of songs available to be streamed and downloaded to end users. Under the subscription model, each of the millions of songs offered through the Music Service is available to be accessed and played on demand by subscribers for so long as their subscription continues. MediaNet serves millions of streams and downloads each day, claiming in an April 2007 press release that it was responsible for "over 400 million plays" in a two-month period.

24.    In addition to making DPDs through its Music Service, MediaNet has made server copies of the millions of musical works in its library to facilitate their delivery to end users. The server copies of copyrighted musical works reproduced, maintained and/or distributed by MediaNet to operate its Music Service also require license authority from the copyright owners.

### MediaNet's Willfulness

25.    During the time that MediaNet was a joint venture with record labels, MediaNet was entitled to obtain licenses for the individual musical works used in its Music Service under a license agreement entered into in October 2001 by the Recording Industry Association of America ("RIAA"), a trade group of which MediaNet's record label parents were members, on the one hand, and HFA and its parent, the National Music Publishers' Association ("NMPA"), on the other ("RIAA Agreement").

26.    The RIAA Agreement provides a streamlined mechanism for obtaining licenses for use of copyrighted musical works for Internet music subscription services. Entities that are covered by the RIAA Agreement are permitted to submit electronic license requests to HFA on a song-by-song basis, and thereupon obtain licenses under Section 115 to make on-demand streams and limited downloads of individual musical works through subscription services.

8

27.     When MusicNet was sold to Baker Capital in or about April 2005, it was no longer covered by the RIAA Agreement, since it was no longer affiliated with a record label member of the RIAA.  MediaNet was advised of its inability to rely on the RIAA Agreement by HFA in May of 2005, and was offered a new licensing agreement modeled on the RIAA agreement.  MediaNet refused the offer of a new licensing agreement.  Subsequently, MediaNet embarked upon a series of failed negotiations with HFA to enter into a new licensing agreement that would permit it to obtain licenses from HFA-affiliated publishers.  Throughout this period, MediaNet was repeatedly warned by HFA concerning its unlicensed status, and that HFA reserved its, and its publisher principals', rights and remedies with respect to MediaNet's unauthorized and infringing use of copyrighted musical works.

28.     Remarkably, despite clear knowledge that it lacks the rights to reproduce and/or distribute Plaintiffs' copyrighted musical works to operate its Music Service, including by digitally transmitting such works as limited downloads and interactive streams through the Music Service, MediaNet has continued to do just that.  Indeed, MediaNet falsely indicates on its website that it has procured the necessary rights in the United States, and that it "report[s] and pays all rights holders."  While MediaNet has obtained some rights for some uses of music by entering into various licensing arrangements with record labels and other music rights owners (and thus clearly understands the need to do so), it has chosen to flout the rights of thousands of HFA-affiliated music publishers by offering their content through its Music Service without permission or compensation.

29.     MediaNet is fully aware that its continued reproduction and distribution of Plaintiffs' copyrighted musical works in connection with its Music Service without proper license authority in place is unlawful.  MediaNet's conduct has been and remains willful and in

9

blatant disregard of the rights of music publishers and songwriters whose works it is exploiting for its own financial gain.

## CLASS ACTION ALLEGATIONS

30.    Representative Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of all music publisher principals of HFA that own or control in whole or in part at least one copyrighted musical work that Defendant has reproduced and/or distributed without authorization in connection with its Music Service (the "Class").

31.    The Class is adequately represented by Representative Plaintiffs Sony/ATV, Peer and MPL. The financial success and ability of Representative Plaintiffs and other Class members to continue to invest in, license and distribute original and valuable creative musical compositions is dependent upon this Court's protection of their property rights.

32.    The members of the Class are so numerous that joinder of all members is impracticable. The Class consists of thousands of music publishers that own or control more than 1.9 million copyrighted musical works.

33.    Representative Plaintiffs' claims are typical of the claims of the Class. Representative Plaintiffs hold rights in copyrighted musical compositions that have been reproduced and distributed by MediaNet through its Music Service without permission and otherwise exploited in violation of their rights. Representative Plaintiffs are typical of other Class members in that they require injunctive and declaratory relief to prevent Defendant from continuing to infringe their exclusive rights under the Copyright Act and have sustained damages as a result of Defendant's wrongful conduct, entitling them to recover statutorily prescribed damages or, at their election, actual damages.

34.    Representative Plaintiffs will fairly and adequately protect the interests of the Class. Representative Plaintiffs are among the leading music publishers in the United States,

10

with catalogs that include some of the most significant music recorded in the twentieth and twenty-first centuries. Representative Plaintiffs have retained experienced and competent counsel, with expertise in both class action litigation and copyright issues. Representative Plaintiffs are committed to the vigorous prosecution of this action and have no interests that are adverse or antagonistic to the Class.

35.     Numerous common questions of law and/or fact exist as to the Class, and these common issues predominate over any questions affecting solely individual members of the Class. The claims of every Class member are uniformly premised upon the unauthorized reproduction and distribution of their copyrighted materials through MediaNet's Music Service customers. Among the questions of law and fact common to the Class are:

a)   Whether Defendant's conduct as alleged herein constitutes direct infringement of the copyrighted musical compositions owned or controlled by Representative Plaintiffs and the rest of the Class;

b)   Whether Defendant's conduct as alleged herein constitutes contributory infringement of the copyrighted musical compositions owned or controlled by Representative Plaintiffs and the rest of the Class;

c)   Whether Defendant's conduct as alleged herein constitutes vicarious infringement of the copyrighted musical compositions owned or controlled by Representative Plaintiffs and the rest of the Class;

d)   Whether Defendant's conduct as alleged herein constitutes "inducing" infringement by others of the copyrighted musical compositions owned or controlled by Representative Plaintiffs and the rest of the Class;

e)   Whether Defendant acted willfully with respect to the acts complained of herein;

11

f)  Whether the transmission of digital files embodying musical works by MediaNet to consumers in the form of limited downloads entails the making of digital phonorecord deliveries, or DPDs, as defined in 17 U.S.C § 115(d);

g)  Whether the transmission of digital files embodying musical works by MediaNet to consumers in the form of interactive streams entails the making of digital phonorecord deliveries, or DPDs, as defined in 17 U.S.C § 115(d);

h)  Whether injunctive relief prohibiting MediaNet's infringing activities is appropriate; and

i)  Whether Representative Plaintiffs and the Class are entitled to damages for Defendant's wrongful conduct as alleged herein pursuant to 17 U.S.C. § 504, including (i) statutory damages or actual damages and disgorgement of profits; and/or (ii) attorneys' fees and court costs.

36.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate the entry of final injunctive and corresponding declaratory relief with respect to the members of the Class as a whole.

37.    A class action is superior to all other available means for the fair and efficient adjudication of Plaintiffs' claims.  The damages suffered by many of the individual Class members are small especially when viewed in light of the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system from the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single

12

adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will ensure consistent rulings and will achieve an appreciable measure of judicial economy. The members of the Class are reasonably ascertainable through methods typical of class action practice and procedure. The benefits of adjudicating this controversy as a class action far outweigh any difficulties in managing the Class.

**FIRST CLAIM FOR RELIEF**
**(Direct Copyright Infringement)**

38.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-37 as if fully set forth herein.

39.     Defendant's unauthorized reproduction and distribution of copyrighted musical works in its Music Service, including in the form of DPDs, infringes Plaintiffs' exclusive rights of reproduction and distribution in such works under the Copyright Act, 17 U.S.C. § 101 *et seq.*

40.     Each unauthorized reproduction and/or distribution of a copyrighted musical work constitutes a separate and distinct act of infringement.

41.     Defendant's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiffs' copyrights and the infringement thereof.

42.     The foregoing acts constitute direct infringement of Plaintiffs' copyrighted musical works.

43.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's direct infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover up to $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

ny-799219 v2

44.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

45.    MediaNet is causing and, unless enjoined by the Court, will continue to cause, Plaintiffs irreparable harm for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of their copyrighted musical works and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such works.

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

46.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-45 as if fully set forth herein.

47.    Through its conduct alleged herein, MediaNet knowingly and systematically induced, caused, materially contributed to and participated in the infringing reproduction and/or distribution of Plaintiffs' copyrighted musical works, including in the form of DPDs, by its business partners and end users.

48.    Each unauthorized reproduction and/or distribution of a copyrighted musical work constitutes a separate and distinct act of infringement.

49.    Defendant's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiffs' copyrights and the infringement thereof.

50.    The foregoing acts constitute contributory infringement of Plaintiffs' copyrighted musical works.

51.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's contributory infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover up to

14

$150,000 in statutory damages for each work infringed.  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

52.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

53.    MediaNet is causing and, unless enjoined by the Court, will continue to cause, Plaintiffs irreparable harm for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of their copyrighted musical works and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such works.

**THIRD CLAIM FOR RELIEF**
**(Vicarious Copyright Infringement)**

54.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-53 as if fully set forth herein.

55.    At all relevant times, MediaNet has and had the right and ability to supervise and/or control the infringing activities alleged herein.  MediaNet has derived and continues to derive significant and direct financial and related benefits from the infringing activities alleged herein.

56.    Each unauthorized reproduction and/or distribution of a copyrighted musical work constitutes a separate and distinct act of infringement.

57.    Defendant's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiffs' copyrights and the infringement thereof.

ny-799219 v2

58.     The foregoing acts constitute vicarious infringement of Plaintiffs' copyrighted musical works.

59.     Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's vicarious infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover up to $150,000 in statutory damages for each work infringed.  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

60.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

61.     MediaNet is causing and, unless enjoined by the Court, will continue to cause, Plaintiffs irreparable harm for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of their copyrighted musical works and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such works.

### FOURTH CLAIM FOR RELIEF
### (Inducing Copyright Infringement)

62.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-61 as if fully set forth herein.

63.     MediaNet has, through its clear expression and other affirmative steps as alleged herein, actively promoted, encouraged and induced its business partners and end users to infringe Plaintiffs' copyrighted musical works.

64.     Each unauthorized reproduction and/or distribution of a copyrighted musical work constitutes a separate and distinct act of infringement.

ny-799219 v2

65.    Defendant's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiffs' copyrights and the infringement thereof.

66.    The foregoing acts constitute inducing infringement of Plaintiffs' copyrighted musical works.

67.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's inducing infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover up to $150,000 in statutory damages for each work infringed.  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

68.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505, and prejudgment interest according to law.

69.    MediaNet is causing and, unless enjoined by the Court, will continue to cause, Plaintiffs irreparable harm for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of their copyrighted musical works and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such works.

### FIFTH CLAIM FOR RELIEF
### (Declaratory Judgment)

70.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-69 as if fully set forth herein.

71.    MediaNet has been notified repeatedly that it cannot operate its Music Service without proper license authority from music publishers.  MediaNet has opted to disregard and challenge these warnings by continuing to operate its Music Service without obtaining such

17

license authority. An actual justiciable controversy exists between Plaintiffs and MediaNet concerning whether MediaNet's transmission of limited downloads and interactive streams embodying Plaintiffs' copyrighted musical works involves the unauthorized making of DPDs in violation of Plaintiffs' rights under the Copyright Act.

**WHEREFORE**, Plaintiffs on behalf of themselves and the Class, pray for judgment against Defendant as follows:

a) A declaration that, through its conduct, Defendant has willfully infringed copyrighted musical works owned and controlled by Representative Plaintiffs and other members of the Class by reproducing and/or distributing such works without permission, including, without limitation, a declaration that:

    (i)    Defendant's unauthorized transmission of limited downloads embodying Plaintiffs' copyrighted works involves the making of DPDs in violation of Plaintiffs' rights under the Copyright Act; and

    (ii)    Defendant's unauthorized transmission of interactive streams embodying Plaintiffs' copyrighted works involves the making of DPDs in violation of Plaintiffs' rights under the Copyright Act.

b) An award of statutory damages to Representative Plaintiffs and other members of the Class in the amount of $150,000 for each work infringed or, at Plaintiffs' election, actual damages and profits in an amount to be determined at trial;

c) A permanent injunction prohibiting the continued infringement of copyrighted musical works owned or controlled by Representative Plaintiffs and other members of the Class;

ny-799219 v2

d) An order directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of copyrighted musical works owned or controlled by Representative Plaintiffs and other members of the Class;

e) Prejudgment interest according to law;

f) An order awarding Representative Plaintiffs and other members of the Class their attorneys' fees, together with the costs and disbursements of this action, and

g) Such other and further relief as the Court deems just and proper.

Dated: February 13, 2008
     New York, New York

                                    MORRISON & FOERSTER LLP

                                    By: _____

                                        James E. Hough
                                        Amy L. Beckman
                                        Attorneys for Plaintiffs
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900
                                        JHough@mofo.com

**APPENDIX A**

| PLAINTIFF | MUSICAL COMPOSITION | COPYRIGHT REGISTRATION NUMBER | ARTIST(S) |
|---|---|---|---|
| Frank Music Corp. | Baby, It's Cold Outside | EU 123945 <br> R 602510 <br> EP 36499 <br> R 631968 | Martina McBride |
| Peer International Corporation | Besame Mucho | EP 65106 <br> R 436261 | Andrea Bocelli |
| Sony/ATV Songs LLC | Black Horse & The Cherry Tree | PA 1341776 | KT Tunstall |
| Peer International Corporation | Échame A Mí La Culpa | EP 54679 <br> RE 255-965 | Luis Miguel |
| Sony/ATV Songs LLC | God Bless America Again | EP 264310 | Jimmy Sturr |
| peermusic III, Ltd. | La Camisa Negra | PA 1-252-263 | Juanes |
| Songs of Peer, Ltd. | Llegó El Domingo | PA 1-380-178 | Ivy Queen |
| Peer International Corporation | Mar y Cielo | EP 74106 <br> RE 96-162 | José Feliciano |
| Songs Of Peer, Ltd. | Nunca Había Llorado Así | PA 1-334-438 | Victor Manuelle |
| Sony/ATV Songs LLC | Our Song | PA 1381164 | Taylor Swift |

**APPENDIX A**

| PLAINTIFF | MUSICAL COMPOSITION | COPYRIGHT REGISTRATION NUMBER | ARTIST(S) |
|---|---|---|---|
| Peer International Corporation | Perfume de Gardenias | R 313712 | José Feliciano |
| Sony/ATV Tunes LLC | S.E.X. | PA 1371264 | Lyfe Jennings |
| Sony/ATV Songs LLC | Standing In The Shadows | EP 287654 | Hank Williams |
| Sony/ATV Songs LLC/ Sony/ATV Sounds LLC | Tear Drops On My Guitar | PA 1381162 | Taylor Swift |
| Sony/ATV Songs LLC | Thnks Fr Th Mmrs | PA 1387098 | Fall Out Boy |
| Sony/ATV Songs LLC | This Ain't A Scene, It's An Arms Race | PA 1387098 | Fall Out Boy |
| RYTVOC, Inc. | Tubby The Tuba | EU 41329  R 578394  EP 65649  RE 64-685 | Danny Kaye |
| MPL Music Publishing, Inc | Well All Right | EU 522672  RE 290-914  EP 125824  RE 290-929 | Albert Hammond, Jr. |

### APPENDIX A

| PLAINTIFF | MUSICAL COMPOSITION | COPYRIGHT REGISTRATION NUMBER | ARTIST(S) |
|---|---|---|---|
| Peer International Corporation | Wildwood Flower | EU 111336 R 302826 AA48764 | Reese Witherspoon |
| Sony/ATV Songs LLC | Would You Go With Me | PA 1324599 | Josh Turner |